Good morning. I am Steve Haddon. I'm a lawyer from Helena, Montana, and I represent Doug Knight. The United States points out in its brief that Doug Knight has not done well on supervised release. I certainly can't argue with that assessment. He is somewhat of akin to a petulant teenager who is constantly challenging the authority of his father, in this case challenging the authority of the U.S. Probation Office and in turn the district court. However, Knight's conduct on supervised release is not the main issue which is before this court. The issue which is before this court is whether under 3583 subsection 8, the district court had authority to impose upon Mr. Knight an additional 12-month term of supervised release following his release from incarceration on an underlying two-year sentence for the actual violation of his supervised release. As the court is aware from our briefing on this issue, it is our position that the district court erred in imposing this 12-month term of supervised release and indeed was without authority to be able to impose a term of supervised release. There's no question in this case that under 18 U.S.C. 3583b2, the maximum term for a Class C felony, which Mr. Knight was originally convicted of, possession of firearms, is 36 months or three years. Through his journey with the district court and in violating conditions of supervised release, Mr. Knight was sent back to jail on two occasions prior to the revocation which puts us before the court today. In each of those instances, Mr. Knight was sentenced to nine months incarceration to be followed by a term of supervised release. It is our position, and we believe that the plain language of 3583 dictates this, that those 18 months were required to be reduced from the statutory maximum term of supervised release which could be imposed. Therefore, well, let me go one step further, and that on this, for sake of making it a little bit easier to follow, on this third revocation where he was returned to jail and sentenced to 24 months, those 24 months also have to be deducted from the 36 months. So in sum, we have 24 months incarceration plus 18 months incarceration gives us 42 months. The statutory maximum here is 36 months. Therefore, the district court erred in imposing an additional term of supervised release of 12 months once Mr. Knight is released from jail serving on the underlying two years. All right. Did you diagram all of this? Did I diagram it? Yes. No, sir. I mean, I diagrammed it in my head, but I didn't. Well, then just leave your head here in the courtroom. Okay. I didn't. We've got a good picture of this. Okay. We spent a lot of time on it. Okay. Would the court like me to continue? Are there any further arguments or questions from the court? No questions. No questions? No, please, sir. Okay. Okay. Well, I will. I'm sorry for that last remark. When I was in law school in Berkeley with Captain Kidd, who was one of our professors, he always told the story of a young lawyer who took the LARC. He used to take this train from San Francisco to L.A. There were no airplanes then. I mean, he practiced law in about 1910, say. And he got this partner who went down there on the train with a young associate. And when they got down to L.A., the partner asked the young associate, Where are the books? And he said, Oh, we don't need the books. It's all in my head. And the partner looked at the young associate and said, Next time, leave your head at the office and bring the books with you. So that's about the only lesson I learned from Professor Kidd. I've been waiting to apply that lesson sometime in my life. You gave me the chance. Yes, sir, you have done it. Thank you. Well, with that, I will turn it over to Ms. Stewart, and I will reserve time as may be necessary. All right. Good morning. I'm Paulette Stewart. I'm an assistant United States attorney in Helena, Montana. I represent the United States in this matter. As an initial matter, Judge Lovell, I believe, correctly and legally sentenced Doug Knight on this most recent revocation to the 24 months' imprisonment. And then it is also the United States' position that the judge legally and correctly imposed the additional 12 months' supervised release following this most recent revocation. If he did not, then what is your position about what the disposition should be? Judge, that's a hard one, because I think it's very clear that the judge ---- Why is it hard? I mean, I assume what you want is to treat it as a package deal and undo the whole thing and send it back so that he can then make a decision anew. That is correct, Your Honor, because I believe it's clear that Judge Lovell wanted to both incarcerate Mr. Knight and keep him on further conditions. Which he could still do, just not to the degree that he did. Correct, Your Honor. Okay. Correct. Well, I think that's a good question. I believe that given the number of failed supervised releases, it basically hamstrings the court in a way if we aggregate the prior terms of incarceration because it may very well hamstring the court, but that's what the statute rather than undo the damage that was already done by the Fifth Circuit in Vera at the time. So ---- That's correct. And I guess with Vera, the issue that we take up with Vera, Your Honor, is that it looks solely at the second paragraph in subsection H. It doesn't actually look at the revised subsection H as a whole. When it says we've aggregated before in the past, we've aggregated, and we're going to keep on aggregating. So I guess really what we're asking you to do is look at the entirety of subsection H. If Congress should have said something different, you know, because it still says less any term of imprisonment that was imposed upon revocation of supervised release, the second paragraph or sentence didn't change, but the first part of that did. And so we're just looking, asking you to basically look at the whole thing anew when you look at the judge's sentence so that it does apply for each revocation. Each revocation stands on its own in both imprisonment and in supervised release to follow. And that's, frankly, Your Honor, what we're asking you to do. OK. Is the courthouse in Helena still located at the head of Last Chance Gulch? No, Your Honor. The courthouse in fall of 2002 opened a new one in Helena, and it's now in the great northern town portion of downtown Helena. If there aren't any... Colorful names for the courthouses. In Missoula, I think it's at Hell's Gate. In Helena, it's Last Chance Gulch. If there aren't any further questions, Your Honors, I will... I'm part of the Chamber of Commerce there. All right. Thank you. Thank you. Anything further? One point. Ms. Stewart and the United States have asked this Court to read the second sentence of subsection H in context with the first sentence, because the first sentence had some changes, language changes, by Congress in 2003. However, it's the second sentence of subsection H, which has always been operative here and which the other circuits, the sister circuits to this Court have relied upon in saying we have to aggregate these amounts. The United States makes a point in its brief of saying Congress is presumed to know the law. Yes, they are. If they would have wanted, Congress would have wanted something other than an aggregation of sentences as far as supervised release is concerned, they knew the language of what was there. They knew how it had been written. They knew how it had been interpreted by the sister circuits to this Court. And if they would have wanted to make the change, they could have made the change in the language to say, fellas, everything is off the table here. No more aggregation of supervised release. Thank you. The matter stands submitted. And the next case, U.S. v. Gable, that's also submitted on the briefs. And now we come to Eno v. Blades.
judges: Pregerson, Rymer, Tashima